LINCOLN RAPID TRANSIT COMPANY V. JOANNA NICHOLS.

FILED JUNE 29, 1893.    No. 5073.

1. **Street Railways:** FRANCHISE: EXEMPTION FROM LIABILITY. The granting of a franchise by the electors of a city to a corporation to build and operate a street railway in the streets of the city does not exempt the street railway company from liability for injuries caused by its negligence, whether such negligence consists in the improper and careless management of its property or in the character of the motive power employed in propelling its cars.

2. **Personal Injuries:** CONTRIBUTORY NEGLIGENCE: ATTEMPT TO ESCAPE DANGER. When one is placed by the negligence of another in a situation of peril, his attempt to escape danger, even by doing an act which is also dangerous and from which injury results, is not contributory negligence such as will prevent him from recovering for an injury, if the attempt was one such as a person acting with ordinary prudence might, under the circumstances, make.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

*Webster, Rose & Fisherdick,* for plaintiff in error.

*Adams & Scott* and *I. W. Lansing, contra.*

RAGAN, C.

Mrs. Nichols sued the Lincoln Rapid Transit Company in the district court of Lancaster county, and in her petition alleged: That the transit company was a corporation and owned and operated a street railway in the city of Lincoln; that said street railway was operated by running a steam engine on and along its track with coaches attached; that said engine is frightful to horses and teams coming in view of or passing near it, all of which was well known to the transit company; that there was a large and almost constant travel in wagons, buggies, carriages, and other vehicles drawn by horses on the streets used by the transit company, which was well known to it; that on the 5th day of July, 1890, and prior thereto, the transit company wrongfully and without right, and negligently and carelessly ran said engine and cars along certain streets of said city of Lincoln, on which streets there was constant travel as above stated; that on said date, while she was driving along Twelfth street in said city, in a buggy drawn by a gentle and quiet horse, the transit company wrongfully, negligently, and carelessly, and without warning, ran said engine to and within the immediate vicinity of the place where she was driving said horse; that he became suddenly frightened and unmanageable, and in said fright upset said buggy and threw her upon the track and ground and greatly injured her.

The transit company pleaded to this petition three defenses:

1. A denial of negligence on its part.

2. A franchise from the electors of the city of Lincoln to operate its street railway.

3. Contributory negligence on the part of Mrs. Nichols.

There was a trial to a jury, with a verdict and judgment for Mrs. Nichols, and the transit company brings the case here, and assigns as errors the refusing of instructions requested by it; the giving of instructions objected to by it, and that the evidence does not sustain the verdict.

The instructions requested by the transit company and refused are as follows:

"4. If the jury find that the plaintiff had a fractious or skittish horse, or that the plaintiff was not a proper driver of the horse that was hitched to her vehicle, they will find for the defendant.

"5. If the jury find that plaintiff, by her incompetence as a driver, or by carelessness in any way, contributed to the accident, the jury will find for the defendant.

"6. If the jury find that horses generally are not frightened by the motor engine of the defendant, and that the machine was operated with ordinary and usual care at the time of the accident, they will find for defendant.

"If the jury find that the plaintiff's horse, while yet a considerable distance from the motor, evinced alarm and a tendency to be frightened, or become unmanageable, then it was the duty of the plaintiff to have turned about and to have done all she could to have avoided the accident; and if the jury find that the plaintiff did not do so, they will find for the defendant."

The fourth was correctly refused. Whether Mrs. Nichols' horse was fractious or skittish, or whether she was a proper driver, were proper questions for the jury to consider in determining whether Mrs. Nichols was guilty of contributory negligence. This instruction leaves out entirely the element of negligence on the part of the transit company. If the negligence of the transit company was the proximate cause of Mrs. Nichols' injury, the fact of her

horse being fractious or skittish, or she a poor driver, would not relieve the transit company from liability.

Again, the trial judge in the tenth paragraph of his charge to the jury told them : "If you should find from the evidence that the horse driven by plaintiff was a fractious or skittish horse, or that the plaintiff was not a proper driver of said horse, then plaintiff would be guilty of negligence in driving the horse in the vicinity of the motor and could not recover." So it appears that the transit company has had the benefit of the instruction which it claims was erroneously refused. Certainly the transit company was not entitled to an instruction so broad as the one that was given.

As to instruction No. 5, asked by the transit company and refused, this was also substantially given in paragraph No. 10 of the court's charge, and it was also covered by instruction No. 7, given to the jury at the request of the transit company. That instruction reads as follows: "If the jury find that plaintiff, after she found that her horse was alarmed at the motor, used her whip or otherwise endeavored to force her horse forward towards the motor and compelled him to approach the object that frightened him, such conduct is negligence on plaintiff's part, and they will find for the defendant."

As to instruction No. 6, requested by the transit company and refused, it was substantially given by the trial judge in the latter part of paragraph No. 10 of his charge to the jury, as follows: "And further, if you should find from the evidence that plaintiff's horse, while yet a considerable distance from the motor, evinced alarm and a tendency to be frightened and threatened accident, then it was the duty of the plaintiff to turn about, if she could have done so, and to have done all she could to avoid accident, or all that a reasonably prudent person would have done under the circumstances; and if you should find from the evidence that the plaintiff did not do so, then she would be guilty of such contributory negligence as would prevent her recovery."

Complaint is also made because the court gave to the jury the following instruction: "Whether or not horses are generally frightened by motor engine of the defendant is a matter that you may take into consideration in determining the negligence of the defendant in causing the accident complained of, or the contributory negligence of the plaintiff as to her actions in the vicinity of the motor." Suffice it to say, that there was no error in the giving of this instruction.

The transit company also claims that the court erred in giving to the jury the following instruction: "3. When a plaintiff through the negligence of defendant is placed in a situation where he must adopt a perilous alternative, or where in the terror of an emergency for which he is not responsible he acts wildly or negligently and suffers in consequence, such negligent conduct under the circumstances is not contributory negligence, for the reason that persons in great peril are not to be required to exercise all that presence of mind and carefulness that are justly required of a careful and prudent man under ordinary circumstances." This instruction told the jury, in effect, that if they found that Mrs. Nichols, while placed in a dangerous situation through the transit company's negligence, was frightened and in terror, and acted carelessly and was injured, her conduct under such circumstances was not contributory negligence; as a person in great peril is not required to exercise the care demanded of a careful person under ordinary circumstances.

"A choice of evils may often be all that is left to a man and he is not to blame if he chooses one, nor if he chooses the greater, if he is in circumstances of difficulty and danger at the time and compelled to decide hurriedly." (*Gumz v. Chicago, St. P. & M. R. Co.,* 52 Wis., 672; *Siegrist v. Arnot,* 10 Mo. App., 197; *Wilson v. Northern P. R. Co.,* 26 Minn., 278; *Cuyler v. Decker,* 20 Hun [N. Y.], 173.)

"When one is placed by the negligence of another in a

situation of peril, his attempt to escape danger, even by doing an act which is also dangerous, and from which injury results, is not contributory negligence such as will prevent him from recovering for an injury, if the attempt was one such as a person acting with ordinary prudence might, under the circumstances, make." (*Cook v. Parham*, 24 Ala., 21; *Karr v. Parks*, 40 Cal., 188; *Wesley City Coal Co. v. Healer*, 84 Ill., 126; *Chicago & A. R. Co. v. Becker*, 76 Id., 25; *Frink v. Potter*, 17 Id., 406; *Linnehan v. Sampson*, 126 Mass., 506; *Pennsylvania R. Co. v. Werner*, 89 Pa. St., 59; *Wilson v. Northern P. R. Co.*, 26 Minn., 278; *Stokes v. Saltonstall*, 13 Pet. [U. S.], 181; *Stickney v. Maidstone*, 30 Vt., 738; *Page v. Bucksport*, 64 Me., 51.) And this is the rule, though a person would not have been injured had he not made an attempt to escape the threatened danger. (*Iron R. Co. v. Mowery*, 36 O. St., 418; *Wilson v. Northern P. R. Co.*, 26 Minn., 278; *Schultz v. Chicago & N. W. R. Co.*, 44 Wis., 638; *Gumz v. Chicago, St. P. & M. R. Co.*, 52 Id., 672.)

When the accident occurred Mrs. Nichols and the transit company's engine were approaching one another, and the contention of the transit company is that Mrs. Nichols should have turned about and made an effort to escape, and in not doing so she was guilty of contributory negligence. The evidence is that on one side of the street stones were piled up for curbing purposes, and she could not turn on that side. To turn the other way she would have to cross the street railway track in front of the coming locomotive; that she was frightened; her horse terrified and practically unmanageable; had she attempted to cross the track and been struck when crossing, that would have been alleged here as contributory negligence. She may not have chosen the wiser or safer course. The trial judge told the jury, "if you should find that plaintiff's horse, while yet a considerable distance from the motor, evinced alarm and a tendency to be frightened and threatened accident, then it was the

duty of the plaintiff to turn about, if she could have done so, and to have done all she could to avoid accident, or all that a reasonably prudent person would have done under the circumstances; and if you should find from the evidence that the plaintiff did not do so, then she would be guilty of such contributory negligence as would prevent her recovery." The instruction complained of then, while not very happily expressed, stated the law correctly, and was properly given, in view of paragraph No. 10 of the charge of the trial judge.

The transit company insists that the verdict of the jury is not supported by the evidence, and this assumption is based on the contention that the evidence shows no negligence on the part of the company. The grounds of negligence charged to the transit company by Mrs. Nichols in her petition were that it operated its street railway by running a steam engine on its tracks through a populous part of the city of Lincoln, and on the streets in which there was constant travel of vehicles drawn by horses, and that said steam engine was of itself frightful to horses, and that on the day of the accident the transit company negligently and carelessly, and without warning, ran the engine in the immediate vicinity of herself and horse, and so frightened the latter that he became unmanageable, upset her buggy, and injured her. The transit company in its answer said: "Denies that its character of machinery is frightful to horses; denies that on July 5, 1890, it negligently or carelessly ran its motor, and denies that it wrongfully, negligently, or carelessly, and without warning, ran its engine to the vicinity where plaintiff was driving, or that her horse became frightened, scared, or unmanageable."

Here, then, we have made these issues: Whether the transit company's steam engine was frightful to horses; whether it was negligent to use said steam engine on its tracks through a populous city, and on much traveled

streets, and whether the transit company's servants in charge of the engine and cars at the time of the accident, were guilty of negligence in their management of the locomotive. There is evidence in the record tending to support the allegations that the engine, with its smoke and steam and noise, was frightful to horses. There was evidence that at the time of the accident the engine was running fast and puffing smoke; that the persons on the engine saw Mrs. Nichols when some distance away; saw that her horse was frightened; that the engine ran within ten feet of her horse before the buggy was upset; that the engine ran so close to her she could not turn and get away. Of course, the evidence on nearly all these points was conflicting. It was a question for the jury to determine. The law has not clothed this court with authority to find conclusions of fact in cases of this character. It is not necessary to the support of the judgment in this case that we should decide that the using of steam engines by the transit company in the operation of its street railway was negligence of itself, but we have an abiding conviction that it was. Here was a large and populous commercial city whose streets were constantly filled with persons on horseback, in buggies, wagons, and carriages; men, women, and even little children were using these streets for business, pleasure, or recreation. A corporation or individual who would put a steam engine on a street railway in such streets must have done so with a reckless disregard and an utter contempt for the lives and limbs of human beings. An examination of the charter of the transit company does not disclose any authority for propelling its street cars by steam, and it is doubtful if any such authority was conferred by that instrument, and if it was, the company's franchise would not excuse it from liability for injuries caused by its negligence, whether such negligence consisted in the mismanagement of its roads and cars, or in the character of the motive power employed.

The judgment of the district court was right and the same is

AFFIRMED.

THE other commissioners concur.